845 A.2d 1215

Millard **TWEEDY**

v.

**STATE of Maryland.**

**No. 35, Sept. Term, 2003.**

Court of Appeals of Maryland.

April 6, 2004.

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Zoe Gillen White, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Respondent.

Argued Before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

Millard Tweedy, petitioner, appeals his sentence for possession with intent to distribute controlled dangerous substances on the grounds that the sentence was illegal because it did not conform to the plea agreement and because the trial court sentenced him *in absentia.* Because we find that the Circuit Court for Baltimore City imposed a sentence which exceeded the terms of the plea agreement, we shall vacate the sentence and remand for resentencing.

## I. Background

Petitioner was indicted by the Grand Jury for Baltimore City on the charges of possession of controlled dangerous substances, possession with intent to distribute, conspiracy to

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

distribute, conspiracy to possess with intent to distribute, and conspiracy to possess marijuana. On April 16, 2001, petitioner appeared in the Circuit Court for Baltimore City with his defense counsel and entered a plea of guilty to the charge of possession of marijuana with intent to distribute.[1] In accordance with Maryland Rule 4–242, defense counsel examined Tweedy, on the record in open court, in order for the court to determine that the plea of guilty was voluntary, with understanding of the nature of the charge and consequences of the plea. Defense counsel advised Tweedy of the consequences of his plea and the terms of the plea agreement. The colloquy proceeded as follows:

> "[Defense Counsel]: The maximum penalty for possession with intent to distribute marijuana is five years incarceration, I believe, and a five thousand dollar fine. You have entered into a plea agreement, Mr. Tweedy, whereby you would receive a sentence of five years, suspend all but six months with two years probation. However—
>
> [State's Attorney]: As a cap.
>
> [Defense Counsel]: That is a cap. However, if you do certain things, that would turn into a complete parole or probation, do you understand that?
>
> [Defendant]: Yes."

The State proffered the factual basis upon which to accept the plea and the court stated, on the record, "accept the pleas." The court concluded the proceedings with the following remarks:

> "Based on the plea agreement and the statements by [the Assistant State's Attorney], the court finds with respect to Mr. Tweedy on Count 1.

* * *

> What the court is going to say is that—I don't know whether I will say it again on July 26th—I hope this works

---

1. Petitioner appeared in court with his co-defendant. Petitioner and the co-defendant entered guilty pleas, and the judge accepted both pleas.

out. If you come back and things have worked out as we hope, the sentence will be five years suspended and two years probation. If it is not as we hope it to be, the sentence on July the 26th will be five years suspend all but six months. If you don't show up at all and you have fulfilled your end of the agreement and you're not able to be here or not here on July the 26th at 9:30 and we have to send out a warrant, the sentence will be five years."

Sentencing was scheduled for July 26, 2001.

At 9:30 a.m., the morning of the sentencing, petitioner was nowhere to be found.[2] The court recessed the proceedings to enable defense counsel to locate his client. Defense counsel later advised the court that he learned that his client was on his way to the courthouse. At 2:00 o'clock that afternoon, petitioner still had not appeared and the judge commenced to sentence Tweedy *in absentia.* The court stated as follows:

"But I compliment counsel making every effort this morning. It is unfortunate, but with Mr. Tweedy's previous history, the Court had been concerned as to whether he was going to appear at the time of sentencing. And the agreement was very clear that, if he appeared, it would be five years, suspend all but six months, two years probation, and that, if he did not appear, the Court would sentence him anyway.

\* \* \*

The Court will always consider a motion to modify, but, in these circumstances where we permit persons to get their life together before coming to court, this Court has never deviated. And the deal is if he shows, one thing if he doesn't.

So in accordance with the Court's previous understanding, the sentence is five years."

---

**2.** The sentencing date was originally scheduled for July 26th but was changed to August 2nd. It is undisputed that petitioner was served with notice of the new date.

Defense counsel subsequently filed a Motion to Correct Illegal Sentence, requesting that, in accordance with the terms of the plea agreement, the court sentence petitioner to a term of five years with all but six months suspended. Although counsel requested a hearing, the judge denied the motion without a hearing.

Petitioner noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed. This Court granted Tweedy's petition for writ of certiorari. *See Tweedy v. State,* 376 Md. 49, 827 A.2d 112 (2003).

## II. Plea Agreement

The first question we address is whether the trial court imposed a sentence beyond the terms of the plea agreement. Whether a plea agreement has been violated is a question of law which we review *de novo.* In considering whether a plea agreement has been violated, several courts have noted that the terms of the plea agreement are to be construed according to what a defendant reasonably understood when the plea was entered. *See, e.g., United States v. Johnson,* 973 F.2d 857, 860 (10th Cir.1992) (quoting *United States v. Jimenez,* 928 F.2d 356, 363 (10th Cir.), *cert. denied,* 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991)). When a guilty plea is predicated upon an agreement, the agreement must be fulfilled. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971). Plea bargains have been likened to contracts, which cannot normally be unilaterally broken with impunity or without consequence. *See State v. Parker,* 334 Md. 576, 604, 640 A.2d 1104, 1118 (1994) (stating that "contract principles should generally guide the determination of the proper remedy of a broken plea agreement" yet "contract principles alone will not suffice"); *United States v. Sandles,* 80 F.3d 1145, 1147 (7th Cir.1996) (stating that "plea bargains are contracts, albeit 'unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain' "). In the instant case, in denying the defense request for a hearing on

the Motion to Correct an Illegal Sentence, the trial court did not make any factual findings as to the terms of the plea agreement. Based on the record presented, we conclude that the trial court did not impose a sentence in accordance with the plea agreement.

The State argues that the plea agreement had not yet been accepted when the judge announced that petitioner's presence at sentencing was required in order for him to receive a sentence of five years, either all suspended, or all but six months suspended. According to the State, the trial court added that condition as the court was accepting the plea. The judge stated that the sentence would be based upon whether petitioner cooperated with the authorities and, regardless of his cooperation, if he failed to appear, the sentence would be five years. The State argues that the judge added the condition of petitioner's presence at sentencing while the judge was in the process of accepting the agreement (with that condition included). In the alternative, the State argues that petitioner consented to this condition because he failed to object to it.

Petitioner argues that his appearance at sentencing was not part of the negotiated plea agreement with the State. The judge accepted the guilty plea and the terms of the agreement—then, he *sua sponte* added that if petitioner did not appear at sentencing, the sentence would be five years in prison. Petitioner points out that his lawyer, while conducting the guilty plea litany in open court, stated the terms of the agreement—without that condition—on the record. The judge accepted the plea, stating "[b]ased on the plea agreement and the statements by [the prosecutor]." Thus, petitioner argues, the judge approved the plea agreement at that point, subsequently adding the requirement of petitioner's appearance at the sentencing hearing, thereby unilaterally and improperly changing the terms of the negotiated, and approved, plea agreement. Petitioner argues that his failure to object to this added condition does not matter because the plea agreement that was stated on the record during the guilty plea litany became fully enforceable when the judge accepted it.

Plea agreements are an accepted procedure throughout the United States and are recognized as an important component of the criminal justice system. *See Santobello,* 404 U.S. at 260, 92 S.Ct. at 498, 30 L.Ed.2d at 432 (approving plea bargaining, stating that the process "is an essential component of the administration of justice"); *Chertkov v. State,* 335 Md. 161, 170, 642 A.2d 232, 237 (1994); *Dotson v. State,* 321 Md. 515, 516–18, 583 A.2d 710, 710–11 (1991). The Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

Maryland Rule 4–243(c) sets forth the procedures to be followed when the prosecutor and defendant have entered into a plea agreement. The Rule, in pertinent part, provides as follows:

"(c) Agreements of sentence, disposition, or other judicial action.

(1) Presentation to the court. If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.

(2) Not binding on the court. The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) Approval of plea agreement. If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties,

a disposition more favorable to the defendant than that provided for in the agreement.

(4) Rejection of plea agreement. If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty or nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4–242(c) and the plea of nolo contendere only pursuant to Rule 4–242(d)."

Petitioner negotiated a plea agreement that contemplated a particular sentence. Once the plea was accepted, the court was required to impose the agreed upon sentence, assuming that all the conditions imposed upon the defendant were fulfilled. *See State v. Poole*, 321 Md. 482, 497, 583 A.2d 265, 272 (1991) (holding that when a court has accepted a guilty plea and has committed itself to be bound by the provisions contained within the plea agreement, the judge cannot refuse to carry out the bargain that induced the plea). Under the plain text of the Maryland Rules, plea negotiations are recognized and sanctioned. Rule 4–243(c)(3) requires that "the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement."

The parties do not dispute that the judge explicitly accepted petitioner's guilty plea. The parties also do not dispute that the judge approved the plea agreement, rather than rejecting it or deferring its approval or rejection to a later date. The disagreement concerns the timing of and manner in which the judge approved the plea agreement. These factors—the "when" and "how" of the approval—dictate whether petitioner's presence at sentencing was a condition of the plea agree-

ment or a requirement which the judge unilaterally imposed after the agreement had been approved.[3]

 We find that defense counsel clearly and unambiguously stated the terms of the plea and the anticipated length of the sentence on the record. Defense counsel stated that Tweedy's sentence was "capped" at five years, all but six months suspended with two years probation, with the understanding that if he cooperated and performed "certain things," the sentence would be "complete parole or probation." The trial court accepted the plea agreement, and the guilty plea, and only then warned Tweedy of the consequences of his failure to appear at sentencing. These consequences were discussed with Tweedy *after* the court accepted his plea. While terms and consequences may be imposed as a condition of accepting a guilty plea, it may be done only before the plea is accepted, not after. When the parties agree as part of a plea bargain to an increase in the sentence if the defendant does not appear for sentencing, that provision is valid and enforceable. *See, e.g., United States v. Rivera,* 954 F.2d 122, 124 (2d Cir.1992) (finding that reasonable meaning of plea agreement was that defendant's failure to appear for sentencing would release the government from its obligation to recommend a sentence reduction); *State v. Holman,* 486 So.2d 500, 503 (Ala.1986) (holding that defendant tendered guilty plea with full knowledge of trial judge's condition that defendant appear for sentencing and therefore plea agreement with that condition was enforceable); *People v. Masloski,* 25 Cal.4th 1212, 108 Cal.Rptr.2d 484, 25 P.3d 681, 687 (2001) (holding that provision for an increased sentence in the event defendant failed to appear for sentencing was part of the plea agreement); *State v. Garvin,* 242 Conn. 296, 699 A.2d 921, 930 (1997) (holding that plea bargain did not violate due process when defendant agreed to condition that trial court could impose greater sentence if defendant failed to appear at sentencing); *Jones v. Commonwealth,* 995 S.W.2d 363, 366

---

**3.** The State does not argue that the defendant's presence at sentencing is a condition implicit in every plea agreement.

(Ky.1999) (holding that condition of plea agreement providing for a recommended sentence reduction only in the circumstance that defendant appeared for sentencing was a lawful condition). But, the condition providing for an increase in the sentence must be an express term of the plea bargain, clearly agreed upon *before* the guilty plea is accepted.

A defendant who does not appear for sentencing does not automatically forgo the protection of Rule 4–243(c)(3). Whether a defendant is entitled to the benefit of the bargain is determined by whether the defendant has fulfilled his or her obligation under the agreement. Absent a specific term of the agreement that appearance at sentencing is part of the agreement, failure to appear at sentencing may constitute a separate violation of the law, *see, e.g.,* Md.Code (2001, 2003 Cum. Supp.) § 5–211(b) of the Criminal Procedure Article, or contempt of court, *see* Md.Code (1973, 2002 Repl.Vol., 2003 Cum. Supp.) § 1–202 of the Courts and Judicial Proceedings Article, but a sanction for the defendant's non-appearance may not be repudiation of the plea bargain.

Courts that have considered this issue have distilled principles to guide their analysis and treatment of plea agreements in the context of a defendant's nonappearance at sentencing. *See, e.g., People v. Casillas,* 60 Cal.App.4th 445, 70 Cal.Rptr.2d 290, 294 (1997). First, when a defendant does not appear at sentencing after entering a negotiated plea, and no specific sanction or consequence is mentioned for nonappearance, if the court refuses to honor the plea agreement, Rule 4–243 has been violated and the defendant is entitled to a remedy. Second, the same is true when, during the plea proceedings but after the parties have negotiated the basic plea agreement, the court unilaterally imposes an additional condition providing a sanction for nonappearance. Finally, when the parties themselves agree as part of the plea agreement to a specific sanction for nonappearance, and the court accepts the plea in accordance with the agreement, the defendant is subject to the bargained-for sanction and is not entitled to any remedy. The important point is that the condition must be an integral part

of the plea agreement and agreement must be reached *before* the plea was accepted, not after.

Several courts around the country have considered this issue and have reached a similar conclusion. *See, e.g., People v. Masloski,* 25 Cal.4th 1212, 108 Cal.Rptr.2d 484, 25 P.3d 681 (2001); *People v. Casillas,* 60 Cal.App.4th 445, 70 Cal.Rptr.2d 290 (1997); *Valentine v. State,* 736 So.2d 706 (Fla.Dist.Ct.App. 1999); *People v. Rossman,* 309 Ill.App.3d 662, 243 Ill.Dec. 147, 722 N.E.2d 1216 (2000); *Boyd v. State,* 10 S.W.3d 597 (Mo.Ct. App.2000). *But see United States v. David,* 58 F.3d 113, 115 (4th Cir.1995) (noting that although the plea agreement between defendant and the government did not address the effect of defendant absconding before sentencing, implicit in every plea agreement is the requirement that the defendant appear for sentencing and failure to do so relieves the government of the obligation to recommend a reduction in sentence).

■ Petitioner requests specific performance of the plea agreement. In this State, it is well settled that where the defendant has not received the benefit of a plea bargain to which he is entitled, the defendant ordinarily may elect to have the bargain specifically enforced or withdraw the guilty plea. *See, e.g., Jackson v. State,* 358 Md. 259, 278, 747 A.2d 1199, 1209 (2000) (remanding to the lower courts with instructions to specifically enforce an agreement breached by the State); *State v. Brockman,* 277 Md. 687, 699–700, 357 A.2d 376, 384 (1976); *Miller v. State,* 272 Md. 249, 255, 322 A.2d 527, 530 (1974). We said in *Jackson,* as follows:

"The basic ground rules governing the negotiation and enforcement of plea agreements were set out in *Brockman,* as to which the Court summarized: 'the standard to be applied to plea negotiations is one of fair play and equity under the facts and circumstances of the case, which, although entailing certain contract concepts, is to be distinguished from ... the strict application of the common law principles of contracts.' Thus, it is now well settled in this State that 'when a plea bargain has been agreed to by both a proper representative of the State and a defendant, and is

not in violation of any law or public policy of this State, it would be a grave error to permit the prosecution to repudiate its promises in a situation in which it would not be fair and equitable to allow the State to do so.' "

*Jackson*, 358 Md. at 275, 747 A.2d at 1207 (citation omitted).

Although in this case it was the court which failed to abide by the bargain, not the prosecutor, the choice of remedy is the same. *See Poole*, 321 Md. at 496, 583 A.2d at 272; *United States v. Ritsema*, 89 F.3d 392, 402 (7th Cir.1996) (holding that the district court improperly rescinded its prior approval of a plea agreement and, on remand for resentencing, ordering specific enforcement of plea agreement); *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185, 198 (1995) (holding that where trial court unilaterally modified a previously accepted plea agreement, defendant was entitled to specific performance of the agreement if, on remand, evidence failed to show that defendant misrepresented facts to the court); *People v. Danny G.*, 61 N.Y.2d 169, 473 N.Y.S.2d 131, 461 N.E.2d 268, 271 (1984) (holding that specific performance of plea agreement was proper remedy where court breached plea agreement by refusing to impose the agreed upon sentence).

Petitioner has requested specific performance of the plea agreement with respect to the agreed upon sentence. He is entitled to the benefit of his bargain. We shall vacate the sentence imposed by the trial court and remand for resentencing consistent with the plea agreement and this opinion.

### III. Sentencing *in Absentia*

Petitioner argues that the trial court erred in sentencing him *in absentia*. He maintains that, first, the record does not support a finding that his right to be present at sentencing was voluntarily waived; and second, the trial court abused its discretion in refusing to consider deferring the sentencing proceeding until he was brought before the court.

When petitioner did not appear for sentencing, the trial court imposed a sentence of five years incarceration, forfeited petitioner's bail, and issued a bench warrant. Subsequently,

defense counsel filed a Motion to Correct Illegal Sentence. Defense counsel argued that the sentence imposed by the court violated the plea agreement and requested an opportunity to present evidence to support his proffer that petitioner's failure to appear at sentencing was attributable to an alcohol problem and "bouts of forgetfulness caused by a prior assault." The trial court denied the motion, without a hearing.

▆▆▆ We hold that the trial court erred in denying petitioner a hearing on his Motion to Correct Illegal Sentence, thereby denying him an opportunity to explain his absence from the sentencing proceeding. Assuming that the trial court had the discretion to sentence petitioner when he did not appear, when petitioner was apprehended and brought before the court, petitioner should not have been precluded from explaining his absence. A defendant's explanation of his absence, and the trial court's finding of fact in this regard, is an important component of the evidence available to a reviewing court in determining whether it was error to sentence a defendant *in absentia. See Fennell v. State,* 492 N.E.2d 297, 299 (Ind.1986).

Maryland has long recognized the right of a criminal defendant to be present at every stage of the trial. *See Collins v. State,* 376 Md. 359, 375, 829 A.2d 992, 1001 (2003) (citing *Pinkney v. State,* 350 Md. 201, 208–09, 711 A.2d 205, 209 (1998)); *Williams v. State,* 292 Md. 201, 211, 438 A.2d 1301, 1306 (1981) (pointing out that a criminal defendant's right to be present at every stage of the trial is a common law right). The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This right of confrontation, applicable to the states through the Fourteenth Amendment, *see Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), encompasses the right of a defendant in a criminal case to be present at every stage of the trial. *See Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970). Article 21 of the Maryland Declara-

tion of Rights requires that "in all criminal prosecutions, every man hath a right ... to be confronted with the witnesses against him." Thus, the right to be present at trial is provided for and protected by the Fourteenth Amendment to the United States Constitution, the Maryland Declaration of Rights, and the common law. It is implemented by Maryland Rule 4–231.

Rule 4–231 addresses the presence of the defendant. The Rule provides, in pertinent part, as follows:

"(a) When presence required. A defendant shall be present at all times when required by the court. A corporation may be present by counsel.

(b) Right to be present—Exceptions. A defendant is entitled to be present at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248; or (3) at a reduction of sentence pursuant to Rules 4–344 and 4–345.

(c) Waiver of right to be present. The right to be present under section (b) of this Rule is waived by a defendant:

(1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

(2) who engages in conduct that justifies exclusion from the courtroom; or

(3) who, personally or through counsel, agrees to or acquiesces in being absent."

Although the Rule does not state explicitly that the defendant has the right to be present at sentencing,[4] "every stage of the

---

**4.** The predecessor of Rule 4–231, prior Maryland Rule 724, explicitly stated that "[t]he defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these Rules." The committee note to Rule 4–231 and Rule 724 states that except when specifically covered by the Rule, the matter of presence of the defendant is left to case law, and the Rule is not intended to exhaust all situations. The change in language of Rule 4–231 was not intended to be a

trial" includes sentencing. *See, e.g., Bartholomey v. State,* 267 Md. 175, 187 n. 6, 297 A.2d 696, 702 n. 6 (1972) (stating that sentencing hearing is a critical stage of the proceeding and the defendant is entitled to be present); *State v. Ditmars,* 98 Idaho 472, 567 P.2d 17, 19 (1977) (stating that defendant has constitutional right to be present at imposition of sentence); *Jones v. Commonwealth,* 227 Va. 425, 317 S.E.2d 482, 483 (1984) (stating that presence at every stage of trial includes sentencing).

The right to be present at trial is not absolute and may be waived. Similarly, in Maryland, the right to be present at sentencing may be waived by a defendant.[5]

---

substantive change to exclude the right of a defendant to be present at sentencing.

The Maryland Rules are replete with references to the defendant's rights at sentencing, as well as the court's obligations at sentencing. For example, before sentence is imposed, the defendant has the right to allocute. Rule 4–342(f) provides that "[b]efore imposing sentence, the court shall afford the defendant the opportunity, *personally* and through counsel, to make a statement and to present information in mitigation of punishment." (Emphasis added.) Rule 4–342(i) requires that at the time of sentencing, the court shall advise the defendant of any appeal rights, sentence modification and reduction rights, and time limits for ordering a transcript after filing an appeal. In drug cases, Rule 4–340 requires the court, immediately after sentencing the defendant, to take certain reporting steps with respect to any license a defendant holds if the defendant has a prior conviction, or if the court determines that there is a relationship between the current conviction and a license. The defendant would have a right to participate in this hearing.

**5.** The issue of sentencing *in absentia* has been addressed in the federal courts and in many of our sister states. The legal effect of the absence of the defendant at sentencing has had a checkered history. *See* Annot., *Voluntary Absence of Accused When Sentence is Pronounced,* 59 A.L.R. 5th 135 (1998, updated 2003). The majority view is that a defendant may waive or forfeit the right to be present at sentencing. *See, e.g., People v. Williams,* 24 Cal.2d 848, 151 P.2d 244, 247 (1944); *Capuzzo v. State,* 596 So.2d 438, 440 (Fla.1992); *Byrd v. Ricketts,* 233 Ga. 779, 213 S.E.2d 610, 611 (1975); *State v. Fry,* 61 Haw. 226, 602 P.2d 13, 17 (1979); *People v. Nielson,* 187 Ill.2d 271, 240 Ill.Dec. 650, 718 N.E.2d 131, 145 (1999); *Harrison v. State,* 707 N.E.2d 767 (Ind.1999); *Carter v. Commonwealth,* 782 S.W.2d 597, 602 (Ky.1989); *People v. Palmerton,* 200 Mich.App. 302, 503 N.W.2d 663, 664 (1993); *People v. Corley,* 67 N.Y.2d 105, 500 N.Y.S.2d 633, 491 N.E.2d 1090, 1092 (1986); *State v.*

■ In *Pinkney v. State,* 350 Md. 201, 711 A.2d 205 (1998), we reviewed a defendant's right to be present in the context of the guilt-innocence stage of the proceedings. A defendant is entitled, under Rule 4–231, under Maryland common law, and

---

*Wanosik,* 31 P.3d 615, 620 (Utah Ct.App.2001), *aff'd by State v. Wanosik,* 79 P.3d 937, 941 (Utah 2003).

The minority view is that sentencing may never occur in a defendant's absence, irrespective of whether the defendant is absent voluntarily. *See, e.g., State v. Utecht,* 228 Minn. 44, 36 N.W.2d 126, 131 (1949); *State v. Ernest,* 200 Neb. 615, 264 N.W.2d 677, 679 (1978); *State v. Koopmans,* 210 Wis.2d 670, 563 N.W.2d 528, 532 (1997). Other courts have held that sentencing *in absentia* should only take place in the most extraordinary circumstances and only where it would otherwise work an injustice. *See, e.g., State v. Fettis,* 136 Ariz. 58, 664 P.2d 208, 209 (1983); *State v. Braun,* 253 Kan. 141, 853 P.2d 686, 690 (1993).

Some states have statutes, rules, regulations, or constitutional provisions governing the sentencing of an absent defendant. For example, the Commonwealth of Virginia precludes by statute sentencing *in absentia. See* Va.Code Ann. § 19.2–237 (2000 Repl.Vol., 2003 Cum. Supp.) (stating that a defendant charged with a misdemeanor shall not be sentenced to jail *in absentia* ). The Court of Appeals of Virginia, finding that the policy considerations against sentencing *in absentia* apply equally to felony cases, has extended this *per se* rule to felony cases. *Head v. Commonwealth,* 3 Va.App. 163, 348 S.E.2d 423, 429–30 (1986).

Federal Rule of Criminal Procedure 43 initially provided that a defendant may not be sentenced *in absentia,* absent extraordinary circumstances. *See, e.g., United States v. Lastra,* 973 F.2d 952, 956 (D.C.Cir.1992) (holding that Rule 43 mandates that the defendant be present "for all but the most ministerial of sentencing actions"); *United States v. Ammar,* 919 F.2d 13, 17 (3d Cir.1990) (stating that "[a]lthough sentencing *in absentia* should be reserved for extraordinary circumstances, under certain circumstances a defendant may waive his right to be present"); *United States v. Songer,* 842 F.2d 240, 244 (10th Cir.1988) (noting that "[t]he rule that the defendant must attend his sentencing is not subject to any exception"); *United States v. Brown,* 456 F.2d 1112, 1114 (5th Cir.1972) (stating that a defendant may only waive his right to be present at sentencing "in the most extraordinary circumstances, and where it would otherwise work an injustice . . . and then only under appropriate safeguards, as where the defendant has expressly waived his right to be present either by sworn affidavit or in open court for the record"). The Rule was amended in 1995, and now permits the district court to sentence a defendant who has pled guilty *in absentia* when the defendant is voluntarily absent. *See, e.g., United States v. Jordan,* 216 F.3d 1248, 1249 (11th Cir.2000). The revision created a sea change in the approach in federal courts to sentencing *in absentia,* precipitating a change from an almost absolute ban on sentencing *in absentia* to one within the discretion of the trial court.

as a constitutional right, to be present at trial. *Id.* at 208, 711 A.2d at 209. That right, however, may be waived. At least with respect to trial proceedings, we established in *Pinkney* that when faced with the nonappearance of a defendant, "before a court may find an agreement or an acquiescence to trial *in absentia,* the court must generally be satisfied of two primary facts: that the defendant was aware of the time and place of trial, and that the nonappearance was both knowing and sufficiently deliberate to constitute an agreement or acquiescence to the trial court proceeding in his or her absence." *Id.* at 215–16, 711 A.2d at 212. Once the court finds that the defendant's nonappearance was voluntary, the inquiry is not at an end. The court must then "balance two competing interests: the right of the defendant to be present at trial, and the need for the orderly administration of the criminal justice system." *Collins,* 376 Md. at 376, 829 A.2d at 1002 (quoting *Pinkney,* 350 Md. at 213, 711 A.2d at 211).

The clear message is that trial *in absentia* is not favored and that it "should be the extraordinary case, 'undertaken only after the exercise of a careful discretion by the trial court.' " *Pinkney,* 350 Md. at 221, 711 A.2d at 215 (quoting *In re Dunkerley,* 135 Vt. 260, 376 A.2d 43, 48 (1977)). *See also State v. Fettis,* 136 Ariz. 58, 664 P.2d 208 (1983). A court must consider all relevant circumstances and then exercise its discretion in deciding whether to proceed. Although not mandating consideration of any particular factors in determining whether to proceed without the defendant, we noted with approval the factors set out in *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.1972), including "the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly multiple-defendant trials; [and] the burden on the Government in having to undertake two trials." *Pinkney,* 350 Md. at 219–20, 711 A.2d at 214. We also emphasized that "the public interest and confidence in judicial proceedings is best served by the presence of the defendant at trial." *Id.* at 218, 711 A.2d at 214.

Like the right to be present at the guilt-innocence phase of the trial, the right to be present at sentencing may be waived by the defendant's voluntary absence from the sentencing proceedings. Although *Pinkney* dealt with waiver of the right to be present at trial, our reasoning applies to sentencing *in absentia*. *See Commonwealth v. Hilburn,* 746 A.2d 1146, 1149 (Pa.Super.Ct.2000) (noting that in assessing the propriety *vel non* of sentencing *in absentia,* the court uses the same analysis as it does for absence at trial). A judge may not automatically conclude voluntariness based solely on the unexplained absence of a defendant who has been notified of the date and time of sentencing. *See Collins,* 376 Md. at 376, 829 A.2d at 1002.

Under Rule 4–231, petitioner could properly be sentenced *in absentia*. A trial judge has the discretion to sentence a defendant *in absentia*. A trial court's finding of waiver, however, does not require but merely *permits* the court to proceed in the defendant's absence. *See Barnett v. State,* 307 Md. 194, 213, 512 A.2d 1071, 1080–81 (1986) (noting that a trial court which has concluded that a defendant's absence was voluntary is not compelled to conduct a trial *in absentia* but may exercise discretion and postpone the trial until the defendant is apprehended).

Where the court finds that the defendant has voluntarily absented himself from the sentencing proceedings, the court may proceed in the defendant's absence after consideration and balancing of factors, including the additional burdens, waste, and expense inflicted upon the court, the State, and witnesses, and the likelihood of apprehending the defendant within a reasonable time. The factors that bear on the exercise of discretion and underlie the decision to proceed with the trial in the defendant's absence are rarely present in determining whether to proceed to sentence *in absentia*. *See Head v. Commonwealth,* 3 Va.App. 163, 348 S.E.2d 423, 430 (1986) (noting that unlike the decision to proceed with the nonappearing defendant at trial, none of the relevant factors are present at sentencing; loss of witnesses, multiple-defendant

issues, juror inconvenience, and difficulty of rescheduling are all not present).

At most sentencing proceedings, the loss of witnesses, the difficulty of rescheduling the case, the issue of multiple defendants, or other prejudices to the State are rarely a factor and generally are not a compelling reason to proceed with the sentencing in the defendant's absence. On the other hand, an indefinite delay in sentencing, precipitated by the defendant's misconduct, might be severely prejudicial to the State. An open-ended postponement of the sentencing could interfere significantly with the orderly judicial process in that the appeal date is extended indefinitely and if the case were to be reversed years later, the State might be at severe disadvantage for retrial. *See United States v. Jordan,* 216 F.3d 1248, 1251 (11th Cir.2000). In addition, a verdict of guilty is not a final judgment until sentence is pronounced, and if a defendant were to flee to a jurisdiction where no extradition treaty or convention provides for surrender of the defendant, the defendant could potentially avoid a conviction.

There are many benefits to requiring that a defendant be present at sentencing, particularly when incarceration is to be imposed. There are benefits to the State as well as the defendant. The State benefits by the defendant's presence for several reasons. First, if incarceration is imposed, the defendant is present and may immediately be taken into custody. Second, the presence of the defendant makes him or her publicly accountable for the criminal conduct. In the oft-cited Note, *Procedural Due Process at Judicial Sentencing for Felony,* 81 Harv. L.Rev. 821 (1968), the author commented on the value to society of the defendant's presence at sentencing, as well as the benefit to the defendant, as follows:

> "Presence is of instrumental value to the defendant for the exercise of other rights, such as to present mitigating evidence and challenge aggravating evidence, and it may also be advantageous to him that the decision maker be required to face him. The state may have an interest in the presence of the defendant in order that the example of personal admonition might deter others from similar crimes.

\* \* \*

However, there is an additional and perhaps more fundamental justification for the right to be personally present. Respect for the dignity of the individual is at the base of the right of a man to be present when society authoritatively proceeds to decide and announce whether it will deprive him of life or how and to what extent it will deprive him of liberty. It shows a lack of fundamental respect for the dignity of a man to sentence him *in absentia*. The presence of the defendant indicates that society has sufficient confidence in the justness of its judgment to announce it in public to the convicted man himself. Presence thus enhances the legitimacy and acceptability of both sentence and conviction."

*Id.* at 831 (footnotes omitted). It has been said that the defendant's presence at sentencing "encourages public confidence in the fairness of the proceedings." *United States v. Lastra,* 973 F.2d 952, 956 (D.C.Cir.1992). While victims of crime in Maryland have a right to be heard at sentencing, *see* Md.Code (2001, 2003 Cum.Supp.) § 11–403 of the Criminal Procedure Article, and a defendant's failure to appear is disturbing, disruptive, and frustrating for victims, as well as the court, the victims are often better served by having the defendant hear their words and the impact of the crime. *See State v. Wanosik,* 79 P.3d 937, 945 (Utah 2003) (Nehring, J., concurring).

Sentencing *in absentia* has many disadvantages. Rule 4–342, governing sentencing procedure in non-capital cases, contemplates the defendant's presence, affording the defendant the right to allocute and to present mitigating evidence.[6] In

---

6. The right of allocution existed at common law. *See Harris v. State,* 306 Md. 344, 355, 509 A.2d 120, 125 (1986) (noting that allocution permits a defendant to inform the court of any mitigating factors relevant to sentencing, or simply to plead for leniency); *United States v. Waters,* 158 F.3d 933, 943 (6th Cir.1998) (defining "allocution" as the opportunity for the defendant personally to speak to the court before sentence is imposed). Black's Law Dictionary defines "allocution," *inter alia,* as an unsworn statement, not subject to cross-examination,

addition, the Rule requires the trial judge to advise the defendant of important procedural rights which are triggered by the imposition of sentence, such as the right of appeal, to any sentence review under the Review of Criminal Sentences Act, any right to move for modification or reduction of sentence, and the time allowed for the exercise of these rights. The court must also inform the defendant of the requirement of ordering a transcript if an appeal is filed.[7]

We need not address in the instant matter whether the trial court made an adequate inquiry into whether petitioner's absence was voluntary because the sentence, in any case, must be vacated and petitioner is entitled to have the sentence imposed in accordance with the plea agreement. It is clear from the record, however, that the trial court did not consider postponing the sentencing until petitioner was apprehended on the bench warrant and returned to court. Assuming *arguendo* that petitioner voluntarily waived his presence, the trial judge did not consider anything other than petitioner's nonappearance in deciding to sentence him *in absentia*. The instant case is one in which the court, had it considered all of the relevant factors, might well have concluded that adjournment for a reasonable period of time to apprehend petitioner and to bring him before the court was more appropriate than sen-

---

from a convicted defendant to the sentencing judge or jury in which the defendant "can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." *Black's Law Dictionary* 75 (7th ed.1999).

7. We take no position and make no comment on what is known as the "automatic dismissal" rule, *see United States v. Ortega–Rodriguez,* 13 F.3d 1474 (11th Cir.1994), or the "escape rule," *see Thompson v. Missouri Board of Probation and Parole,* 39 F.3d 186 (8th Cir.1994). *See also* Annot., *Application of Fugitive Disentitlement Doctrine in Federal Criminal Cases,* 179 A.L.R. Fed. 291 (2002, updated 2003). The Supreme Court reiterated in *Ortega–Rodriguez v. United States,* 507 U.S. 234, 242, 113 S.Ct. 1199, 1204, 122 L.Ed.2d 581, 593 (1993), that where a defendant becomes a fugitive from justice during the pendency of an appeal, the appellate court has the authority to dismiss the appeal. The Court noted that dismissal after a defendant has fled the jurisdiction serves an important deterrent purpose and "advances an interest in efficient, dignified appellate practice." *Id.* at 242, 113 S.Ct. at 1204–05, 122 L.Ed.2d at 593.

tencing petitioner *in absentia.* The court could have ascertained, from petitioner himself, whether he had in fact complied with the terms of the plea agreement.

There was nothing extraordinary about this particular case. Petitioner pled guilty and was convicted of possession of marijuana with the intent to distribute. There were no individual victims who had an interest in testifying at the sentencing. *See* Md.Code (2001, 2003 Cum.Supp.) § 11–403 of the Criminal Procedure Article (affording the victim or victim's representative the right to address the court during sentencing). In addition, the likelihood was great that sentencing could have taken place without inordinate delay, with petitioner present. There was no evidence that petitioner had absconded from the jurisdiction and no reason to believe that a bench warrant would not have brought him promptly before the court. A bench warrant twice in the past effectively prompted petitioner's appearance when he had failed to appear before the trial court on two previous court dates. The State had no need to summons witnesses and needed little time on the trial court's docket.

While we do not suggest that a defendant can *never* be sentenced *in absentia,* sentencing *in absentia* should rarely occur.[8] A defendant's right to be present at every stage of trial, his right of allocution, and the importance of notice of the date from which the time limit on his appeal right begins to run, weigh heavily against sentencing *in absentia.* It should only be the "extraordinary case," *Pinkney,* 350 Md. at 221, 711 A.2d at 215, where proper exercise of judicial discretion results in sentencing in a defendant's absence.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE SENTENCE OF*

---

8. Justice Nehring, in his concurring opinion in *State v. Wanosik,* 79 P.3d 937, 945 (Utah 2003), noting that sentencing *in absentia* is a seldom used practice, sounded the caution bell that sentencing *in absentia* "should, except in highly unusual circumstances, continue to be avoided by trial judges."

*THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT COURT FOR RESENTENCING IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

Concurring Opinion by HARRELL, Judge.

I concur in the judgment because I would conclude that the sentencing judge erred in not conducting a hearing on Tweedy's Motion To Correct Illegal Sentence (insofar as Tweedy sought to offer reasons for his involuntary non-appearance at sentencing) and thereby failed to engage in necessary fact-finding and the drawing of conclusions as required by *Pinkney* (*but see* Majority op. at 498–99, 845 A.2d at 1228–29 where it avoids deciding directly this question ("We need not address ... whether the trial court made an adequate inquiry into whether Petitioner's absence was voluntary ...")). I hold this view notwithstanding the sentencing judge's apparent prior knowledge of similar reasons tendered for Tweedy's earlier "no-shows," as well as the State's express incredulity as to the contemporarily proffered reasons (*See* Respondent's Brief at 23). I have some problems with a number of things in the Majority opinion.

First, the Majority opinion observes that "[a] trial judge has the discretion to sentence a defendant *in absentia*." Majority op. at 495, 845 A.2d at 1226–27. Yet, in almost the next breath, the Majority so circumscribes that discretion as to suggest that its exercise to do so hardly ever will be affirmed ("While we do not suggest that a defendant can *never* be sentenced *in absentia*, sentencing *in absentia* should rarely occur ...". It should only be the 'extraordinary case' ... where proper exercise of judicial discretion results in sentencing in a defendant's absence." Majority op. at 499, 845 A.2d at 1229 (emphasis in original)). This treatment creates mere illusions. If sentencing judges are to be said to possess this discretion, and we outline neutrally the proper considerations to guide them in its exercise, that should be enough to be said.

An appellate court should standdown at that point and decide each appeal according to whether abuse is found (or not) in each case.

Second, I disagree with the analytical viewpoint, and hence the result, of Part II of the Majority opinion. The Majority chooses to focus critically on only a particular part of the plea hearing, a slice in time if you will, instead of considering the proceeding as a whole or as a continuum. Not illogically perhaps, the Majority seizes upon the trial judge's utterance of the phrase "[a]ccept the pleas," made immediately following counsels' interrogation of Tweedy and his co-defendant as to their understanding of the proposed plea agreements. According to the Majority, it was at that moment in time that an enforceable plea agreement arose, notwithstanding that the State had yet to satisfy the need for a factual basis to accept the plea. There is no doubt, however, that the judge made clear before the proceeding concluded what would happen if Tweedy failed to appear for sentencing or failed to cooperate with the State. Tweedy knew it. His counsel knew it. They said nothing to evidence their disagreement or non-acceptance of the judge's added requirement. Thus, if viewed as a whole, the 16 April 2001 hearing resulted in the court's acceptance of Tweedy's negotiated plea agreement with the State, conditioned on the court's requirement of Tweedy's presence at sentencing, together with the known consequences of Tweedy's failure to meet that and the pre-existing requirements. In effect, further negotiations occurred on the record of the hearing and Tweedy acquiesced in the added condition in order to receive the court's acquiescence. The additional condition imposed a minimal additional "burden" on Tweedy. Thus, until the proceeding on 16 April 2001 was concluded, the terms of the plea agreement acceptable to the court were not cast in concrete.

Alternatively, I would adopt the view of the U.S. Court of Appeals for the Fourth Circuit and hold that implicit in every plea agreement is the requirement that the defendant appear for sentencing. *See U.S. v. David,* 58 F.3d 113 (4th Cir.1995). Tweedy walked from the courtroom on 16 April 2001 knowing exactly what would happen if he failed to appear at sentencing

**502**

(unless he could persuade the sentencing judge, pursuant to *Pinkney*, that his absence was other than voluntary). It was in resolving the latter question that the trial judge erred, for the reasons explained previously.