Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/13/2020 08:07 AM CDT

State of Nebraska, appellee, v.
Timothy L. Becker, appellant.

___ N.W.2d ___

Filed December 20, 2019.    No. S-19-008.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Constitutional Law: Sentences.** Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law.

5. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.

6. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

7. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

8. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

9. **Constitutional Law: Sentences.** The Eighth Amendment prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed. The U.S. Supreme Court has characterized this as a "narrow proportionality principle" which does not require strict proportionality between crime and sentence, but, rather, forbids only extreme sentences that are grossly disproportionate to the crime.

10. ____: ____. Under ordinary Eighth Amendment analysis, each sentence is considered separately, not cumulatively, for purposes of determining whether it is cruel and unusual.

11. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

12. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

13. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

14. ____. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.

Appeal from the District Court for Scotts Bluff County, Andrea D. Miller, Judge, on appeal thereto from the County Court for Scotts Bluff County, James M. Worden, Judge. Judgment of District Court affirmed.

Bernard J. Straetker, Scotts Bluff County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Timothy L. Becker, appellant, was convicted in the county court for Scotts Bluff County of 21 misdemeanor counts of violating a protection order and sentenced to county jail for 180 days on each count, to be served consecutively. On appeal to the district court, Becker claimed that the sentences imposed were (1) excessive, (2) disproportionate in violation of the Eighth Amendment, and (3) invalid because when the county court orally pronounced his sentences in open court, it failed to state where the sentences were to be served. The district court rejected each of these claims and affirmed Becker's convictions and sentences. On appeal to this court, Becker claims the district court erred when it rejected each of his contentions regarding his sentences. Because we find no merit to Becker's claims of error, we affirm the order of the district court, which affirmed Becker's convictions and sentences.

## STATEMENT OF FACTS

On May 29, 2018, the State charged Becker in the Scotts Bluff County Court with 21 counts of violating a protection order under Neb. Rev. Stat. § 42-924(4) (Cum. Supp. 2018). Each count involved a violation of the same protection order and the same victim, but each count was alleged to have occurred on a different date from May 3 through May 23, 2018. Each count was charged as a second offense based on a prior conviction for violation of a protection order involving the same victim. The complaint alleged that the prior offense had occurred on January 3, 2018, and that Becker had been convicted of the prior offense on May 3.

Pursuant to a plea agreement, the State reduced each of the charges to a first offense and Becker pled no contest to all 21 counts on June 5, 2018. Under § 42-924(4), a first offense of violating a protection order is a Class I misdemeanor, whereas a second or subsequent offense is a Class IV felony.

In its factual basis for the pleas, the State asserted that a protection order had been entered against Becker on October

19, 2017, and had remained in effect since issued and that the protection order prohibited Becker from, inter alia, telephoning or otherwise communicating with the victim. The State further asserted that on the dates alleged, Becker was incarcerated in the Scotts Bluff County jail and that jail records showed that Becker had telephoned the victim's number on each of the charged dates, "often multiple times a day." The State asserted that in the timeframe alleged, Becker had made over 300 calls to the victim's number and that "over 150 of those were completed phone calls."

At the July 31, 2018, sentencing hearing, the county court received evidence, including the victim's impact statement. After hearing arguments from the State and from Becker, the county court sentenced Becker to imprisonment for 180 days for each of the 21 convictions and ordered that the sentences be served consecutively to one another. In connection with the imposition of sentences, the county court stated that it had considered the victim impact statement, Becker's criminal history, the nature of the offenses, public safety, and the need for punishment. The county court further stated that it considered Becker's comments at the sentencing hearing, which "very much went to blame other people rather than to take personal responsibility and make any promises not to do that in the future."

Before pronouncing the sentence, the county court had a discussion with counsel regarding where Becker would serve his sentences "if he is given over a year sentence." In that discussion, the court made reference to Neb. Rev. Stat. § 28-106(2) (Reissue 2016), which provides in part:

> Sentences of imprisonment in misdemeanor cases shall be served in the county jail, except that such sentences may be served in institutions under the jurisdiction of the Department of Correctional Services if the sentence is to be served concurrently or consecutively with a term for conviction of a felony and the combined sentences total a term of one year or more.

At the end of the discussion, the court stated that it was "going to issue the sentence, and then I am going to look at that [location issue] before I issue the commitment order showing where the commitment will take place. . . . [H]opefully I can still get that figured out yet today, but, if not, first thing in the morning." See Neb. Rev. Stat. § 29-2403 (Reissue 2016) (providing for warrant of commitment). While counsel and Becker were present in the courtroom, the court pronounced a sentence of 180 days for each count. The written sentencing order, signed and dated by the county court on July 31, 2018, stated that Becker was "sentenced to the Scotts Bluff County Jail" for consecutive sentences of 180 days for each of the 21 misdemeanor convictions, for a total of 3,780 days. The sentencing order was filed on August 1.

Becker appealed his convictions and sentences to the district court. After briefing and argument, the district court filed an order which affirmed the county court's judgment. The district court stated that Becker argued that (1) the sentences imposed by the county court were excessive, (2) the sentences violated the Eighth Amendment because they were disproportionate to the crimes committed, and (3) the sentences were invalid because the county court did not announce in open court where Becker would serve his sentences. Regarding excessive sentences, the district court determined that the sentences were within statutory limits, were supported by competent evidence, and did not constitute an abuse of discretion. Regarding disproportionate sentencing, the district court again noted that the sentences were within statutory limits and that Becker's criminal history included a violation of the same protection order. The district court also rejected Becker's argument that the sentences were disproportionate because they would be served in county jail "with little services offered and with little opportunity to be outside." The district court noted that the Legislature provided in § 28-106 that sentences for misdemeanors were to be served in county jails unless served concurrently with or consecutively to a sentence for a felony. Based on § 28-106,

the district court determined that because the sentences in this case were for misdemeanors and there was no felony involved, the statutorily required location for the sentences was the county jail. Finally, regarding the failure to announce in open court the location where the sentences would be served, the district court noted that the county court had engaged in a discussion of the issue with counsel and that Becker did not object to the county court's statement that it would research the location issue and issue a commitment order identifying the location following the hearing. The district court noted that the county court sentencing order filed the day after the sentencing hearing provided that the sentences would be served in the county jail. The district court concluded that there was no error regarding sentencing and affirmed.

Becker appeals the district court's order which affirmed his convictions and sentences.

## ASSIGNMENTS OF ERROR

Becker generally claims that the district court erred when it affirmed his convictions and sentences. Becker claims, restated and reordered, that (1) there was plain error and the sentences were not valid, because he was not present in court "when the commitment portion of his sentences [was] imposed"; (2) the sentences imposed violated the Eighth Amendment because they were disproportionate to his criminal history and the severity of the crimes; and (3) the sentences imposed were excessive and an abuse of discretion.

## STANDARDS OF REVIEW

[1-3] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Hatfield, ante* p. 66, 933 N.W.2d 78 (2019). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry

is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

[4,5] Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law. *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id*.

[6,7] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Montoya, ante* p. 96, 933 N.W.2d 558 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## ANALYSIS

Each of Becker's three assignments of error relates to the propriety of his sentences. Thus, we make some initial comments which relate to our analysis of each assignment of error. We initially note that Becker pled no contest to and was convicted of 21 counts of first offense violation of a protection order. Under § 42-924(4), a first offense of violating a protection order is a Class I misdemeanor. The sentencing range for a Class I misdemeanor is found in § 28-106, which provides no minimum and a maximum of 1 year's imprisonment, a $1,000 fine, or both. As noted in the facts above, § 28-106(2) provides in part:

> Sentences of imprisonment in misdemeanor cases shall be served in the county jail, except that such sentences may be served in institutions under the jurisdiction of the Department of Correctional Services if the sentence is to be served concurrently or consecutively with a term for conviction of a felony and the combined sentences total a term of one year or more.

The county court sentenced Becker "to the Scotts Bluff County Jail" for consecutive sentences of 180 days for each of the 21 misdemeanor convictions, for a total of 3,780 days. The individual sentences were within the range allowed under § 28-106, and because the sentences were not ordered to be served concurrently with or consecutively to a sentence for a felony conviction, the sentences were required under the current version of § 28-106(2) to be served "in the county jail."

*Court's Failure to Announce in Court
Where Sentences Would Be Served
Was Not Plain Error.*

We first address Becker's claim that his sentences were invalid because the county court did not announce in open court the location where his sentences would be served. We find no plain error in this respect.

[8] Becker frames this claim as an instance of plain error. As noted in the fact section above, at the July 31, 2018, sentencing hearing, the court had a discussion regarding the location where the sentences would be required to be served and stated that it was first "going to issue the sentence, and then I am going to look at that [location issue] before I issue the commitment order showing where the commitment will take place. . . . [H]opefully I can still get that figured out yet today, but, if not, first thing in the morning." Becker did not object to the sentencing procedure expressed by the court, and therefore he has presented this claim on appeal as a claim of plain error. Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

Becker relies on *State v. Temple*, 230 Neb. 624, 628, 432 N.W.2d 818, 821 (1988), in which we stated: "The pronouncement of the sentence in open court in the presence of the defendant is an important part of the sentencing procedure in

most criminal cases. In imposing sentence, the court should state with care the precise terms of the sentence which is imposed." We have cited *Temple* for the proposition that "where there is a conflict between the record of a judgment and a verbatim record of the proceedings in open court, the latter prevails." *State v. Salyers*, 239 Neb. 1002, 1005, 480 N.W.2d 173, 176 (1992). Becker also relies on *State v. Ernest*, 200 Neb. 615, 617, 264 N.W.2d 677, 679 (1978), in which we stated that Neb. Rev. Stat. §§ 29-2201 and 29-2202 (Reissue 2016) "relating to allocution indicate clearly that sentencing should take place in the presence of the defendant" and that "[t]here is much authority to the effect that a sentence imposed in the absence of the defendant is generally void."

The present case is not a case like *State v. Ernest, supra*, in which a sentencing hearing was held in the defendant's absence, or like *State v. Temple, supra*, where a subsequent written order was alleged to differ from that which was pronounced in court. Becker was present at the sentencing hearing, and the court pronounced the length of the sentences and ordered them to be served consecutively. These critical aspects of the sentence did not differ in the written order that was filed the next day.

As noted, at the sentencing hearing at which Becker was present, the court discussed with the parties the statutory requirement regarding where the sentences would be served. The court referred to § 28-106(2), quoted above, and allowed the parties to comment on the application of the statute. On the undisputed facts of this case, § 28-106(2) clearly required that the sentences be served "in the county jail," which we observe is not under the jurisdiction of the Department of Correctional Services (DCS). In the case of misdemeanors, § 28-106(2) allows for the misdemeanor sentences to be served "in institutions under the jurisdiction of [DCS]" only when they are ordered to be served concurrently with or consecutively to a sentence for a felony conviction. There was no felony conviction at issue in this case, and so, the only statutory option

available to the sentencing court was for the sentences to be served in the county jail as the written order provided.

As stated in *State v. Ernest, supra*, the requirement for the defendant's presence at sentencing stems from §§ 29-2201 and 29-2202. Those statutes focus on the requirement of allocution, i.e., that "the defendant must be informed by the court of the verdict of the jury, and asked whether he has anything to say why judgment should not be passed against him." § 29-2201. It also appears to stem from what we have recognized as a defendant's "constitutionally protected right to be present at all critical stages of his or her trial." *State v. Bjorklund*, 258 Neb. 432, 468, 604 N.W.2d 169, 205 (2000), *abrogated on other grounds, State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008).

We think those concerns were addressed in this case, because Becker was at the sentencing hearing and had the opportunity to argue issues related to the length of sentence, which was pronounced, as well as the location issue, which was a subject of discussion.

The record of the July 31, 2018, sentencing hearing shows that there was a discussion between the court and counsel with Becker present which included reference to § 28-106(2), a statute which required the sentences in this case to be served in the county jail, as the subsequent written order provided. Unlike previous versions of § 28-106(2), which we discuss later in our analysis, under the current version of § 28-106(2), in the absence of a felony, the court had no statutory discretion to order the sentences to be served in a DCS facility rather than the county jail. Therefore, there was nothing that Becker could have argued to convince the county court to order the sentences to be served anywhere other than the county jail; the commitment order would not have been any different even if the court had explicitly stated at the hearing that the sentences were to be served in the county jail. Thus, even if we were to conclude that Becker's presence was required when the sentencing court announced the location where the sentences were to be

served, no plain error occurred. The absence of an announce-ment indicating where the sentences were to be served did not affect Becker's substantial right. Furthermore, if uncorrected, it would not result in damage to the integrity, reputation, and fairness of the judicial process. See *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). We conclude that the district court did not err when it concluded that the county court's failure to state at the sentencing hearing where the sentences would be served was not plain error.

*Eighth Amendment Proportionality Analysis*
*Requires That Consecutive Sentences Be*
*Considered Individually Rather Than*
*Cumulatively; Individual Sentences*
*Imposed on Becker Were Not*
*Disproportionate.*

Becker next argues that his sentences violated the Eighth Amendment because they were disproportionate. We determine that this inquiry must focus on each individual sentence rather than the aggregate of all 21 sentences and that, viewed as such, the sentences were not disproportionate.

[9] The Eighth Amendment prohibits not only barbaric pun-ishments, but also sentences that are disproportionate to the crime committed. *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017). The U.S. Supreme Court has characterized this as a "narrow proportionality principle" which does not require strict proportionality between crime and sentence, but, rather, forbids only extreme sentences that are grossly disproportion-ate to the crime. *Id*. See *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003) (citing *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in judg-ment; O'Connor and Souter, JJ., join)). See, also, *Lockyer v. Andrade*, 538 U.S. 63, 77, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) ("[t]he gross disproportionality principle reserves a con-stitutional violation for only the extraordinary case").

Becker's argument focuses on the fact that he was sentenced to consecutive sentences totaling imprisonment for more than 10 years in the county jail. He contends it is grossly disproportionate to be sentenced to more than 10 years' imprisonment for telephone calls that the victim "didn't have to answer." However, we determine that Eighth Amendment analysis focuses on individual sentences rather than the aggregate of sentences ordered to be served consecutively to one another.

Federal courts have said that the focus of the disproportionality inquiry should be on the individual sentence rather than the aggregate of sentences. "Eighth amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." *U.S. v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988). See, also, *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) (stating that "it is wrong to treat stacked sanctions as a single sanction [because] [t]o do so produces the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim"); *Hawkins v. Hargett*, 200 F.3d 1279 (10th Cir. 1999) (stating Eighth Amendment analysis focuses on sentence imposed for each specific crime, not on cumulative sentence for multiple crimes); *United States v. Schell*, 692 F.2d 672, 675 (10th Cir. 1982) (rejecting Eighth Amendment challenge and stating, in part, that considering consecutive sentences would require court to find that "virtually any sentence, however short, becomes cruel and unusual punishment" when considered in connection with "sentences for prior convictions").

The Court of Appeals for the Second Circuit in *U.S. v. Aiello, supra*, and some of the other federal courts cited above relied on dicta from the U.S. Supreme Court's decision in *O'Neil v. Vermont*, 144 U.S. 323, 12 S. Ct. 693, 36 L. Ed. 450 (1892). In *O'Neil*, the defendant was given consecutive sentences totaling over 54 years for 307 liquor law infractions. The circuit court ultimately concluded that it lacked jurisdiction to decide

the question, but in doing so, it noted that the state court had determined that the significant length of the aggregated sentences did not constitute cruel and unusual punishment. The circuit court quoted the state court's reasoning that "'[i]f [the defendant] has subjected himself to a severe penalty, it is simply because he has committed *a great many* such offen[s]es.'" *Id.*, 144 U.S. at 331 (quoting *State v. O'Neil*, 58 Vt. 140, 2 A. 586 (1886)).

State courts have likewise held that the focus should be on individual sentences rather than the aggregate of sentences. In *State v. Berger*, 212 Ariz. 473, 134 P.3d 378 (2006), the court found no Eighth Amendment violation in a cumulative sentence of imprisonment for 200 years based on consecutive 10-year sentences imposed for 20 counts of possessing child pornography. The Arizona court stated that "'[a] defendant has no constitutional right to concurrent sentences for two separate crimes involving separate acts.'" *Id*. at 479, 134 P.3d at 384, quoting *State v. Jonas*, 164 Ariz. 242, 792 P.2d 705 (1990)). The *Berger* court also stated that "if the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." 212 Ariz. at 479, 134 P.3d at 384. See, also, *State v. Hairston*, 118 Ohio St. 3d 289, 888 N.E.2d 1073 (2008) (stating proportionality review should focus on individual sentences rather than on cumulative impact of multiple sentences imposed consecutively); *State v. Buchhold*, 727 N.W.2d 816 (S.D. 2007) (reviewing cases holding that Eighth Amendment review focuses on individual sentences and concluding that imposition of consecutive sentencing is discretionary matter for sentencing court); *Wahleithner v. Thompson*, 134 Wash. App. 931, 143 P.3d 321 (2006) (stating that except in extremely rare cases, proportionality review for constitutional purposes is review of each individual sentence, not their cumulative effect); *Close v. People*, 48 P.3d 528 (Colo. 2002), *abrogated on other grounds, Wells-Yates v. People*,

No. 16SC592, 2019 WL 5688119 (Colo. Nov. 4, 2019) (stating if proportionality review were to consider cumulative effect of all sentences imposed, result would be possibility that defendant could generate Eighth Amendment disproportionality claim simply because defendant had engaged in repeated criminal activity); *State v. August*, 589 N.W.2d 740 (Iowa 1999) (determining nothing cruel and unusual about punishing person committing two crimes more severely than person committing only one crime, which is effect of consecutive sentencing). But see *State v. Ali*, 895 N.W.2d 237, 246 (Minn. 2017) (stating that under U.S. Supreme Court precedent, "issue of whether consecutive sentences should be viewed separately when conducting a proportionality analysis under the Eighth Amendment remains an open question," particularly with regard to juvenile offenders, in light of *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)).

[10] We agree with the reasoning of these federal and state courts, and we therefore conclude that under ordinary Eighth Amendment analysis, each sentence is considered separately, not cumulatively, for purposes of determining whether it is cruel and unusual. Applying the principle to the instant case, we note that the sentence for each of Becker's 21 convictions was for 180 days in county jail, which was within the statutory limits for a Class I misdemeanor. See § 28-106 (maximum of 1 year's imprisonment for Class I misdemeanor). Eighth Amendment analysis generally respects legislative determinations of statutory sentencing limits. See *State v. Loschen*, 221 Neb. 315, 376 N.W.2d 792 (1985) (stating sentence of imprisonment within limits of valid statute ordinarily not cruel and unusual punishment in constitutional sense). We view each sentence individually and conclude that each individual sentence imposed on Becker was well within the statutory limits and was not grossly disproportionate in violation of the Eighth Amendment. We therefore conclude the district court did not

err when it rejected Becker's Eighth Amendment challenge to his sentences.

*District Court Did Not Err When It*
*Determined That County Court Did*
*Not Impose Excessive Sentences.*

Becker finally claims that the district court erred when it failed to rule that the county court imposed excessive sentences. Sitting as an appellate court, the district court's standard of review was limited to an examination of the record for error or abuse of discretion. See *State v. Hatfield, ante* p. 66, 933 N.W.2d 78 (2019). As explained below, because the county court did not abuse its discretion when it sentenced Becker, the district court did not err when it affirmed the county court's sentencing order.

[11-13] Becker pled no contest to 21 counts of first offense violating a protection order. As noted above, Becker's sentences of imprisonment for 180 days on each count were within statutory limits. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Viewing each sentence individually, we find a sentence of 180 days' imprisonment is well under the maximum potential

sentence of 1 year's imprisonment for a Class I misdemeanor. As such, it is difficult to claim that any individual sentence is excessive. Instead, Becker's excessive sentence argument focuses on the fact that the court ordered the 21 sentences to be served consecutively to one another, resulting in an aggregate sentence in excess of 10 years. He generally argues that 10 years' imprisonment is excessive, because his crimes were basically telephone calls that the victim "didn't have to answer" and his prior criminal history does not show him to be violent or dangerous. Becker appears to place some blame for the offenses on the victim, noting that all the calls were placed from the jail and that the jail calling system notifies the recipient of the caller's identity and gives the recipient the option to refuse the call. He argues that because the victim did not have to take the calls, she evidently wanted to talk to him.

[14] We note first that generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Tucker*, 301 Neb. 856, 920 N.W.2d 680 (2018). The cumulative length of the sentences is due largely to the fact that Becker was convicted of 21 separate violations. Becker pled no contest to the 21 charged violations, and he did not challenge the number of charges on double jeopardy grounds or argue that the charges constituted a single offense. See *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002). We note in this regard that the record indicates that Becker made hundreds of calls in violation of the protection order over the course of 21 days and that the State chose to charge him with just one offense for each day.

The county court appeared to consider appropriate factors in making its sentencing decision. At the sentencing hearing in this case, the county court set forth various factors it had considered. These factors included Becker's criminal history, the nature of the offenses, public safety, the need for punishment, and, in particular, the victim's impact statement. The county court also noted Becker's comments at the sentencing

hearing, which seemed to indicate an unwillingness to accept responsibility for the offenses; the court noted that his comments "very much went to blame other people rather than to take personal responsibility and make any promises not to do that in the future." Becker stated at the hearing that the victim "didn't have to answer my phone calls. She could have blocked me. . . . But every time I called she answered." Our review of the record in this case indicates that the court considered relevant factors, and the record does not indicate that the court considered any improper factors.

In connection with his Eighth Amendment argument considered above, Becker in part argued that consecutive sentences were disproportionate because they would result in his spending several years in county jail, a facility which he asserts is not amenable to incarceration for that period of time. As we determined above, for purposes of Eighth Amendment analysis, in the absence of specific law to the contrary, sentences are considered individually, and therefore Becker's argument regarding the cumulative time he will spend in county jail was not relevant to our Eighth Amendment analysis. We therefore consider Becker's cumulative argument as part of Becker's contention that consecutive sentences were excessive and an abuse of discretion.

As we have noted, unless prescribed by statute, sentencing courts are afforded discretion as to whether to impose consecutive sentences. See *State v. Tucker, supra*. The underlying rationale behind Becker's argument against consecutive sentences is that imposition of consecutive terms is improper, because all sentences will be served in county jail rather than in institutions under the jurisdiction of DCS which are better suited than the county jail for incarceration for a longer period of time. However, as we noted above, the only option under the facts and the current provisions of § 28-106 was for the sentences to be served in county jail; the county court had no discretion to order otherwise. Given the sheer volume of Becker's convictions for violation of the protection order, and with due

regard for additional uncharged violations, we do not believe the sentencing court abused its discretion when it imposed consecutive terms.

For completeness, we note that prior to amendments in 2015, Neb. Rev. Stat. § 28-106 (Cum. Supp. 2014) allowed sentences for misdemeanor sentences to be served in DCS facilities under certain circumstances even when not made concurrently with or consecutively to a sentence for a felony conviction. We also note that Neb. Rev. Stat. § 28-105(2) (Reissue 2016) requires that felony sentences for maximum terms of imprisonment for 1 year or more must be served in DCS facilities. This appears to indicate that there has been a legislative policy determination that DCS facilities are better suited than county jails for longer sentences. However, if there are policy reasons that long periods of incarceration for multiple misdemeanor convictions could be better served in DCS facilities rather than in county jails as is now required, that is a determination that would need to be articulated by the Legislature.

We conclude that the district court did not err when it concluded that the county court did not abuse its discretion in sentencing Becker. We reject this assignment of error.

## CONCLUSION

We determine that there was no plain error when the county court did not announce at the sentencing hearing where Becker's sentences would be served. We further determine that Eighth Amendment analysis ordinarily focuses on individual sentences rather than the cumulative length of consecutive sentences and that Becker's individual sentences were not grossly disproportionate. We finally determine that because the county court did not impose excessive sentences, the district court did not err when it affirmed Becker's county court convictions and sentences. Finding no errors by the district court, we affirm.

Affirmed.